08 CV 01827

Ralph M. Stone (rstone@lawssb.com)
Thomas G. Ciarlone (tciarlone@lawssb.com)
SHALOV STONE BONNER & ROCCO LLP
485 Seventh Avenue, Suite 1000
New York, New York  10018
212.239.4340

*Attorneys for Plaintiffs*

RECEIVED
FEB 22 2008
U.S.D.C. S.D. N.Y.
CASHIER

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUIS KANTER and JAMIE STARK, derivatively on behalf of Nominal Defendant Centerline Holding Company, | CIVIL ACTION NO: |
| Plaintiffs, | |
| -v- | |
| STEPHEN M. ROSS, MARC D. SCHNITZER, LEONARD W. COTTON, JEFF T. BLAU, ROBERT J. DOLAN, ROBERT A. MEISTER, NATHAN GANTCHER, JEROME Y. HALPERIN, ROBERT L. LOVERD, JANICE COOK ROBERTS, THOMAS W. WHITE, and THE RELATED COMPANIES, L.P., | JURY TRIAL DEMANDED |
| Defendants, | |
| and | |
| CENTERLINE HOLDING COMPANY, A Delaware Statutory Trust, | VERIFIED  SHAREHOLDER DERIVATIVE COMPLAINT |
| Nominal Defendant. | |

Plaintiffs Louis Kanter and Jamie Stark, on behalf and for the benefit of Centerline Holding Company ("Centerline" or the "Company"), set forth the following derivative claims against the individual members of the Board of Trustees of Centerline and The Related Companies, L.P. (the "Related Companies") to stop the proposed sale of a new issue of Centerline preferred stock to an affiliate of the Related Companies (the "Related Affiliate") in an unlawful self-dealing transaction (the "Proposed Transaction"). While the Proposed Transaction handsomely rewards Centerline's insiders, it improperly seeks to do so at the expense and to the severe detriment of Centerline itself.

## INTRODUCTION

1.     On December 28, 2007, Centerline announced it had received a $131 million equity investment commitment from the Related Affiliate, which affiliate happens to be Centerline's largest shareholder. The press release stated in relevant part:

> An affiliate of Related Companies has committed to invest $131,250,000 in Centerline Holding Company through a newly-issued convertible preferred stock. The preferred stock will pay dividends at an 11 percent annual distribution rate and will be convertible at a $10.75 per share conversion rate for an aggregate of approximately 12.2 million common shares of Centerline Holding Company.

trading day. Centerline's value continued to fall in the subsequent trading days, creating a close to 40 percent loss in Centerline's market capitalization and diminution of its value. Absent Court intervention, the Proposed Transaction will continue to cause the Company to suffer severely and substantially.

5.    Moreover, Centerline recently has been named as a defendant in a shareholder fraud class action lawsuit recently filed in this Court.   As such, Centerline now is saddled with litigation defense costs in connection with the shareholder fraud class action pending against it, faces potential enormous liability in that class action, and Centerline's stock price now is subject to a "liar's discount," all as direct consequences of Defendants' misconduct as alleged herein.

6.    Defendants' Proposed Transaction does no more than divert a large portion of Centerline's future income to Centerline's insiders through a sham, related-party transaction with Defendant Related Companies, an entity owned by Defendants Ross and Blau.   The Proposed Transaction is manifestly unjust and unlawful, severely dilutes Centerline's market capitalization and diminishes its value, and has been structured solely to enrich Defendants at Centerline's expense.

7.    Finally, Defendants inadequately supervised Centerline which at all material times lacked adequate internal and financial controls, thereby rendering the

Company's public statements about its financial well-being and future business prospects to be without any a reasonable basis when made.

8.     By reason of the foregoing, and for the reasons set forth herein, Plaintiffs, derivatively on behalf and for the benefit of Centerline, request appropriate equitable relief enjoining Defendants from consummating the Proposed Transaction.

## PARTIES

9.     Plaintiff Louis Kanter is a shareholder of Centerline common stock and held Centerline common stock continuously at all relevant times, as evidenced by his Verification attached hereto. Plaintiff Kanter is a resident of Ohio.

10.     Plaintiff Jamie Stark is a shareholder of Centerline common stock and held Centerline common stock continuously at all relevant times, as evidenced by his Verification attached hereto. Plaintiff Stark is a resident of Texas.

11.     Nominal Defendant Centerline is a holding company and statutory trust created under the laws of Delaware with its principal executive offices located at 625 Madison Avenue, New York, New York. Formerly known as CharterMac, Centerline is a real estate finance and investment company that conducts virtually all of its business through its subsidiaries and funds managed by those subsidiaries.

12.    Defendant Related Companies is the largest shareholder of Centerline's subsidiary Centerline Capital Group ("CCG"), a diversified real estate fund manager with more than $18 billion of assets under management. Defendant Related Companies is a real estate firm specializing in acquisitions and development, financial services and management. Defendant Ross founded Defendant Related Companies, which, like Centerline, is headquartered in New York City.

13.    Defendant Stephen M. Ross is the Chairman of the Centerline Board of Trustees, and Chairman of the Board, Chief Executive Officer (CEO) and Managing General Partner of the Related Companies. Defendant Ross formerly served as Centerline's CEO when the Company was named CharterMac. Defendant Ross is also the Chairman of the Board of Equinox Holdings, Inc. ("Equinox"), an affiliate of Defendant Related Companies. Defendant Ross is a resident of New York.

14.    Defendant Ross owns 92 percent of the Defendant Related Companies, which, in turn, owns Related General II, L.P. ("Related General II"). Related General II owns 685 common shares and more than 10 million Special Common Units of Centerline Capital Company LLC ("CCC"), which are convertible into Centerline common shares on a one-for-one basis (subject to

certain restrictions) and provides more than 10 million Special Preferred Voting Shares, and gives Related General control of nearly 13 percent of Centerline.

15.    Defendant Ross also directly owns 475,345 Centerline common shares, and 400,000 options exercisable for Centerline common shares on a one-for-one basis which, together with his Related General holdings, provide Defendant Ross ownership and control of almost 14 percent of Centerline common shares and related voting power.

16.    Defendant Ross graduated from University of Michigan School of Business and in 2004 endowed the "Stephen M. Ross School of Business" at the University of Michigan ("Ross Business School") with a $100 million gift, $5 million to fund an athletic academic center at the University of Michigan, $1 million to establish an endowed professorship in real estate at the Ross Business School, and donated $50,000 to establish the Henry Pearce Endowed Fellowship in the College of Literature, Science and the Arts at the University of Michigan.

17.    Defendant Jeff T. Blau ("Blau") is a Managing Trustee of Centerline, Managing Trustee and the President of Defendant Related Companies, a Managing Trustee of the Board of American Mortgage Acceptance Company ("AMAC") and former chairman and CEO of AMAC, a publicly traded real estate investment trust managed by one of Centerline's affiliates.  Defendant Blau also serves as director

of the board of Equinox. Defendant Blau is also a member of the Visiting Committee at the Ross Business School at the University of Michigan. Defendant Blau serves on Centerline's investment committee, and owns 60,000 Centerline common shares, 40,000 Special Common Units and 8 percent of the Defendant Related Companies, which together provide Defendant Blau with control of 13 percent of Centerline. Defendant Blau received his undergraduate degree from the University of Michigan. Defendant Blau is a resident of New York.

18.    Defendant Marc D. Schnitzer ("Schnitzer") is Managing Trustee, CEO and President of Centerline. Defendant Schnitzer also serves as the Chairman of the Board of Trustees of AMAC and formerly was AMAC's President. Centerline owns approximately 11 percent of AMAC. Defendant Schnitzer directs the day-to-day operations of Centerline and is responsible for Centerlines's corporate development and strategic planning. Defendant Schnitzer beneficially owns 1.6 percent of Centerline, comprised of the following holdings: 42,365 common Centerline shares held directly; 864,229 Special Common Units owned by Marc Associates, LP, a company wholly owned by Defendant Schnitzer; 5,455 restricted common shares of Centerline, which vested on January 3, 2008, with 6,809 more due to vest on January 3, 2009; 142,045 Centerline's restricted common shares which vest throughout a three-year period beginning February 1,

2008; 39,349 restricted common shares of Centerline which vest throughout a three-year period commencing March 1, 2008; and 137,670 options exercisable for Centerline common shares on a one-for-one basis. Defendant Schnitzer is a resident of New York.

19.     Defendant Leonard W. Cotton ("Cotton") is the Vice Chairman of the Centerline Board.  Defendant Cotton formerly served as the CEO of Centerline REIT, Inc., which together with its parent company Centerline Investors LLC and subsidiaries, was acquired by Centerline in 2006.  Defendant Cotton formerly served as Chairman and CEO of Centerline's REIT's predecessor, REMICap. Defendant Cotton beneficially owns 366,008 Centerline common shares, which includes 111,005 Special Common Interest directly owned and 255,003 restricted common shares that vest through a four-year period that began on August 15, 2007. Defendant Cotton is a resident of New York.

20.     Defendant Robert J. Dolan ("Dolan") is a Managing Trustee and the Dean of the University of Michigan's Ross Business School, as well as the Stephen M. Ross Professor of Business Administration there.  Defendant Dolan is a member of Centerline's audit and compensation committees. Defendant Dolan is a resident of Michigan.

21.    Defendant Nathan Gantcher ("Gantcher") is a Managing Trustee of Centerline and chairman of Centerline's capital markets, compensation, and nominating and governance committees. Defendant Gantcher is a resident of New York.

22.    Defendant Jerome Y. Halperin ("Halperin") is a Managing Trustee, and chairman of Centerline's audit committee.  Defendant Halperin also serves as a member of Centerline's capital markets committee.  Defendant Halperin received a Bachelor of Business Administration from the University of Michigan. Defendant Halprin is a resident of Michigan.

23.    Defendant Robert L. Loverd ("Loverd") is a Managing Trustee, and serves as chairman of Centerline's nominating and governance committee, and also is a member of Centerline's capital markets committee. Defendant Loverd is a resident of New York.

24.    Defendant Janice Cook Roberts ("Roberts") is a Managing Trustee and a member of Centerline's audit and investment committees. Defendant Roberts is a resident of New York.

25.    Defendant Robert A. Meister ("Meister") is a Managing Trustee and a member of Centerline's nominating and governance and compensation committees. Defendant Meister is a resident of Pennsylvania.

26.     Defendant Daryl J. Carter ("Carter") has served as Centerline's Executive Managing Director through at least November 2007. He previously served as Chief Executive Officer of CharterMac Mortgage Capital, a subsidiary of CharterMac. Between December 19, 2007 and December 21, 2007, Defendant Carter, while in possession of material non-public information, sold 139,103 shares of Centerline stock for $1,438,471.03. Defendant Carter is a resident of New York.

27.     Thomas W. White ("White") is a Managing Trustee of Centerline. He also serves as Chairman of the Centerline's Investment Committee. Defendant White is a resident of New York.

28.     Defendants Ross, Blau, Schnitzer, Cotton, White, Dolan, Gantcher, Halperin, Loverd, Roberts and Meister are collectively referred to as the "Managing Trustees" or "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

29.     On May 10, 2007, Individual Defendants caused Centerline to issue a press release entitled "Centerline Holding Company Reports First Quarter Financial Results." In the May 10 press release, Defendant Schnitzer stated in material part:

> "[w]hile our dividend payout ratio is above 100% in this quarter, we are comfortable that our annual dividend will continue to have adequate coverage. . . .Based on the progress we have made executing our business plan to date, we remain confident that we will meet our

> investment and financial goals for the year and do not
> believe it is necessary to revise our guidance at this time."

Also on May 10, 2007, Centerline filed its Quarterly Report with the SEC on Form

10-Q.   Defendants Schnitzer and Levy signed this Form 10-Q and reaffirmed

Centerline's financial results announced on the same day.

30.    Notably, the Individual Defendants caused Centerline to stress that the

fair value of its mortgage revenue bonds was $2.46 billion as compared to $2.39

billion at the end of 2006 and caused Centerline to represent that revenue from

interest income amounted to 63 percent of the Company's total revenue, compared to

57.6 percent in first quarter of 2006.

31.    Also on May 10, 2007, Centerline held a conference call with investors

and securities analysts.   In relevant part, during this conference call, Defendant

Schnitzer stated:

> Although our dividend payout ratio is above 100% in this
> quarter we are comfortable that our annual dividend will
> continue to have adequate coverage.

32.    On July 18, 2007, the Individual Defendants caused Centerline to file a

report with the SEC on Form 8-K.   In relevant part, this Form 8-K stated:

> On July 12, 2007, the Compensation Committee and the
> Nominating    and    Governance    Committee    (the
> "Committees") of *Centerline Holding Company (the
> "Registrant")* approved the cancellation of an option to
> purchase common shares of beneficial interest ("Common

*Shares") of the Registrant issued to Stephen M. Ross, the Chairman of the Board of Trustees of the Registrant, on November 17, 2003 (the "Cancelled Option") and the substitution of the Cancelled Option with an option to purchase Common Shares (the "Substitute Option") on substantially similar terms as the Cancelled Option.*

*The Committees took this action because Mr. Ross otherwise likely would have been subject to adverse tax consequences* under Section 409A ("Section 409A") of the Internal Revenue Code of 1986, as amended, that were unforeseen at the time the Registrant granted the Cancelled Option.

*    *    *    *

The Substitute Option, which was granted with an exercise price above the market price of the Registrant's Common Shares on its grant date, contains the identical exercise price ($17.78 per Common Share) as the Cancelled Option; expires on the same number of Common Shares (800,000) that remained unexercised under the Cancelled Option; and provides for the same vesting schedules with respect to the remaining unvested shares under the Cancelled Option (400,000 of which are vested immediately, 200,000 of which are due to vest on November 17, 2007 and 200,000 of which are due to vest on November 17, 2008). [Emphasis added]

33.    On August 9, 2007, the Individual Defendants caused Centerline to issue a press release entitled "Centerline Holding Company Reports Second Quarter 2007 Financial Results." In this press release, Defendant Schnitzer stated:

In the past few weeks, the financial markets have been impacted by a re-pricing of risk and withdrawal of liquidity due to the serious credit problems in the single-

family subprime mortgage industry, said Marc D. Schnitzer, Chief Executive Officer and President of Centerline. *Centerline does not have any single-family or subprime exposure whatsoever.* [emphasis added]

34.    Also on August 9, 2007, the Individual Defendants caused Centerline to file its Quarterly Report with the SEC on Form 10-Q. Defendants Schnitzer and Levy signed this Form 10-Q and reaffirmed the Company's financial results announced the same day.

35.    Also on August 9, 2007, the Company held a conference call with investors and securities analysts. During this conference call, Defendants Schnitzer and Levy yet again stressed:

> [Schnitzer]: *I would like to assure you that Centerline does not have any single-family or subprime exposure whatsoever. [....]*
>
> *We have sufficient capital resources to execute our business plan, and we are not experiencing any liquidity problems.*
>
>        \*      \*      \*      \*
>
> *The credit quality of our bond portfolio remains very strong.*
>
>        \*      \*      \*      \*
>
> [Levy]: In summary, *we have almost no mark-to-market risk*, and we are fully compliant with all covenants on all of our facilities. [Emphasis added.]

36.    On December 28, 2007, however, the Company shocked investors when it issued a press release entitled, "Centerline Holding Company Completes Securitization of $2.8 Billion Tax-Exempt Affordable Housing Bond Portfolio with Freddie Mac," which, in addition to the sudden sale of this tax-exempt bond portfolio, also announced that Centerline had received a $131 million equity investment commitment from an affiliate of Defendant Related Companies, its largest shareholder. The press release stated in relevant part:

> An affiliate of Related Companies has committed to invest $131,250,000 in Centerline Holding Company through a newly-issued convertible preferred stock. *The preferred stock will pay dividends at an 11 percent annual distribution rate and will be convertible at a $10.75 per share conversion rate for an aggregate of approximately 12.2 million common shares of Centerline Holding Company.* The transaction, which is subject to completion of definitive documentation, is expected to close in January 2008. Centerline will use the net proceeds to reduce corporate debt and fund the Company's growth plans. [Emphasis added.]

37.    The market reacted swiftly to the announcement of the Proposed Transaction. By the close of trading on December 28, 2007, the day of the announcement, Centerline's stock had plunged more than 25 percent to close at $7.70 per share from a December 27, 2007 close of $10.27 per share. Centerline's stock continued to fall further in the trading days subsequent to the December 28

announcement of the Proposed Transaction and has lost approximately 40 percent of its market value since then.

38.    Defendants Ross and Blau all along intended to keep the Proposed Transaction to and for themselves. They failed to properly consider or in good faith solicit third party alternatives to the Proposed Transaction in order to profit from the insider deal at the expense of Centerline and the Company's public common shareholders, and therefore they have breached their fiduciary duties to Centerline and the Company's public common shareholders. Defendants Ross and Blau orchestrated the Proposed Transaction to benefit themselves to the severe detriment of Centerline.

39.    Additionally, Defendants Ross and  Blau, by virtue of the unlawful Proposed Transaction, in essence now cannot be harmed by any downturn in the Company's market price, but stand to benefit from any increase in Centerline's market price nonetheless because the conversion terms set forth in the Proposed Transaction are fixed at $10.75 per share.

40.    Furthermore, the Individual Defendants' failed to ensure that good faith solicitations, negotiations, and/or discussions took place regarding strategic alternatives other than the self-dealing Proposed Transaction, which has and continues to harm Centerline.

41.    As described above, under the Proposed Transaction, the preferred stock will pay a dividend of 11 percent annually and will be convertible into approximately 12.2 million Centerline common shares.   As of October 31, 2007, there were 50,276,852 Centerline shares outstanding.   The Proposed Transaction would therefore give Defendants Ross and Blau control of approximately an additional 20 percent of Centerline should it be consummated, in addition to the substantial controlling interests they already hold, thereby giving Defendants Ross and Blau outright, dominant control of Centerline at a steep discount.

42.    The December 28, 2007 press release also revealed that transaction-related costs as a result of the Freddie Mac transaction would adversely impact the Company's Cash Available for Distribution ("CAD") per share guidance for 2007. The CAD for 2007 was reduced from $1.89 to a range of $1.70 - $1.75.

43.    Also, on December 28, 2007, immediately subsequent to the shocking press release earlier in the day, the Company held a conference call with investors and analysts.   During this conference call, the following exchanges took place, and are set forth below in pertinent part:

> [Defendant] MARC SCHNITZER:  Good morning.  We appreciate everyone calling in on short notice.  *This morning, we announced the closing of a transformational transaction that has been in the works for close to a year and a significant strategic investment in our firm by our larger shareholder.*

*    *    *    *

> We received a $131 million commitment from Related Companies and Related is our largest shareholder. Steve Ross is the Chairman of Related, the Non-Executive Chairman of Centerline and Jeff Blau, Related's President, is a member of Centerline's Board. [Emphasis added.]

44.    Once Defendant Schnitzer finished his presentation, investors and securities professionals participating in the conference call expressed concerns about terms of the Proposed Transaction and immediately conveyed their disgust with respect to this self-dealing maneuver.

> [INVESTOR]: This capital raise makes no sense to me. *If Related wants to participate* in and fund the growth of the Company, *they should be taking the same equity risk as the rest of common shareholders.* They're getting an 11% coupon and a call option on 20% of the Company with no equity risk. *It speaks of an affiliated entity getting a sweetheart deal.* …

> [INVESTOR]: *You can't argue that the company is undervalued and say that this is a good way to raise capital all in the same breath. It's disingenuous.* …

> [INVESTOR]: I have to agree with the prior two callers. *I'm actually disgusted by this transaction. How could insiders to reach such a favorable deal for themselves? . . . . I would be disgusted if I were you are what you've done -- I'm just disgusted.* …

> [INVESTOR]: *Well, your shareholders are clearly not agreeing with you.* Your equities hit a brand-new load today on meaningful volume on even a slow day. So

you're wrong.  So I really kind of question your thinking on this, and *I am just disgusted by it. ...*

[INVESTOR]:  I would just like to -- *I would echo the disgust and frustration of previous shareholders who have spoken on this call.  I think this is a -- I think this transaction is contemptuous of your existing shareholders ....*

[INVESTOR]:  A lot of my questions have been asked, *but this just seems like a grand bit of financial engineering riddled with conflicts of interests.  It doesn't sound like an arm's-length transaction regardless of what you guys say.  And it's all masking massive dilution and a dividend cut.*  That's the perception that I have, and I think it's the perception that the market's having as well, based on how the stock price is doing today.  You guys have done a terrible job the last two years and this just sort of caps it off, so thanks a lot. [Empasis added.]

45.     Additionally, during a period of time when Centerline's stock was artificially inflated due to the Individual Defendants' misrepresentations regarding Centerline's fiscal position and purportedly healthy credit risk profile and its liquidity, Defendant Carter unlawfully traded upon adverse inside information, selling tens of thousands of his personal shares of Centerline stock for ill-gotten gains of more than $1.5 million.  From December 19, 2007 through December 21, 2007, Defendant Carter disposed of nearly 140,000 of his personal Centerline stock at prices between $10.01 and $11.22 per share.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

46.    By reason of their positions as officers and/or directors and fiduciaries of Centerline and because of their ability to control the business and corporate affairs of Centerline the Individual Defendants owed and continue to owe Centerline and its shareholders the fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Centerline in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Centerline and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

47.    By virtue of their positions of power and control at Centerline, the Individual Defendants owe fiduciary duties to Centerline and its shareholders, including the duties of loyalty, good faith, fair dealing and due care. As such, the Individual Defendants were and are required to discharge their duties with care, skill, prudence and diligence in a manner they reasonably believe to be in the best interests of Centerline. The Individual Defendants are flatly prohibited from placing their own personal interests above Centerline's interest. Nonetheless, that is precisely what the Individual Defendants are attempting to do through the Proposed Transaction.

48.    To discharge their duties, the Individual Defendants were and are required to exercise reasonable and prudent supervision over the management and financial affairs of Centerline. By virtue of this obligation, among other things, the law requires that the Individual Defendants:

(a)    Manage, conduct, supervise and direct the business and affairs of Centerline carefully and in good faith in accordance with state and federal laws and regulations and the articles and by-laws of Centerline;

(b)    Exercise reasonable control and supervision over the officers and employees of Centerline;

(c)    Exercise reasonable care and good faith in evaluation of the prudence and soundness of policies and practices proposed to be undertaken by Centerline;

(d)    Ensure that Centerline does not engage in unsafe, imprudent or unsound practices and that Centerline complies with all applicable laws and regulations;

(e)    Establish guidelines and policies adequately governing the structure and organization of the Company's operations;

(f)    Establish guidelines and policies adequately governing Centerline's accounting practices;

(g)    Maintain a proper division of authority and responsibility among the officers and directors of Centerline so as to prevent the dominance of any officer or director in the conduct of the business and affairs of Centerline;

(h)   Ensure that Centerline does not engage in unsafe, imprudent or unsound practices and to become and remain informed as to how Centerline was, and is, in fact, operating;

(i)   Maintain and implement an adequate and functioning system of internal financial and accounting controls and management information systems, such that Centerline's assets would be safeguarded, its financial statements and information would be accurately recorded and reported, and corporate managers would be given prompt notice of serious problems or divergences so that risk to the corporation would be minimized; and

(j)   Supervise the preparation and filing of financial results and financial statements required by law from Centerline, including the Company's Reports on Form 10-K, and to examine and evaluate any reports of examination, audits or other information required by law concerning the financial condition of Centerline and to make, full and accurate disclosure of all material facts concerning, among other things, each of the subjects and duties set forth above.

49.   At all relevant times, the Individual Defendants occupied positions with Centerline or were associated with the Company in such a manner as to make them privy to confidential proprietary information concerning Centerline, its operations, finances, financial condition, products and present and future business

prospects. Because of these positions and such access, each of the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public.

50.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Centerline's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  All of the Individual Defendants were provided with copies of the Centerline's reports and press release alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew or should have known that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading.

## DEMAND FUTILITY AND RELATED DERIVATIVE ALLEGATIONS

51.    Plaintiffs bring this action derivatively in the right and for the benefit of Centerline to remedy the Defendants' breaches of fiduciary duty, abuse of

control, usurpation of corporate opportunity, and unjust enrichment, as well as the aiding and abetting thereof, by the Defendant Related Companies.

52.    Centerline is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

53.    Plaintiffs will adequately and fairly represent the interests of Centerline in enforcing and prosecuting the rights.

54.    Plaintiffs were and are the owners of Centerline stock during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remain Centerline shareholders.

55.    Plaintiffs have not made any demand on the present board of Centerline – the Individual Defendants herein – to institute this action because such a demand would be a futile, wasteful and useless act, particularly for the following reasons:

> (a)    The Centerline Board of Directors and senior management participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Centerline's stockholders or recklessly and/or consciously negligently disregarded the

wrongs complained of herein, and are therefore not disinterested parties. As a result of their access to and review of internal corporate documents, conversations and connections with other corporate officers, employees and directors, and attendance at management and/or Board meetings, each of the defendants knew the adverse non-public information regarding the Proposed Transaction and the Company. Certain directors are also dominated and controlled by other defendants and cannot act independently of them. Pursuant to their specific duties as Board members, defendants are charged with the management of the Company and to conduct its business affairs. Defendants breached the fiduciary duties that they owed to Centerline in that they failed to prevent the self-dealing that is occurring and the wrongful financial reporting. Thus, the Centerline Board cannot exercise independent, objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because each of its members participated personally in the wrongdoing or are dependent upon other Defendants who did;

(b)     The acts complained of constitute violations of the fiduciary duties owed by Centerline's officers and trustees and these acts are incapable of ratification;

(c)     The members of Centerline's Board have benefited, and will continue to benefit, from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of control and the perquisites derived thereof, and are incapable of exercising independent objective judgment in deciding whether to bring this action; and

(d)     Any suit by the current trustees of Centerline to remedy these wrongs would likely expose the Individual Defendants and Centerline to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

56.     Demand on the Centerline Board of Trustees to pursue the claims alleged herein is excused because a majority of that Board is either financially interested in the Proposed Transaction or lacks the independence necessary to

consider any such demand. As of the date of the filing of this Complaint, the Centerline Board of Trustees consisted of the following eleven (11) Managing Trustees: Individual Defendants Ross, Blau, Schnitzer, Cotton, White, Dolan, Gantcher, Meister, Halperin, Loverd and Roberts.

57.     Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by Plaintiff, the current Board has failed and refused to seek to recover for Centerline for any of the wrongdoing alleged herein.

58.     Defendant Ross dominates and controls both Centerline and Defendant Related Companies. He has intertwined relationships with the Boards of both companies as a result of him being the founder of both Centerline and Related. Furthermore, Defendant Ross owns a majority, controlling position in Defendant Related Companies and has a substantial stake in Centerline.

59.     Defendant Blau is beholden to Defendant Ross for his position as a director on Equinox's Board, a Defendant Related Companies affiliate, of which Defendant Ross serves as Chairman. Defendant Blau is further beholden to Defendant Ross for his position as a member of the Visiting Committee of the Stephen M. Ross School of Business at the University of Michigan. Moreover, neither Defendant Ross nor Defendant Blau could act impartially or independently because they designed the Proposed Transaction to benefit themselves as they the

only shareholders of Related General II. None of Centerline's Managing Trustees adequately considered whether Centerline's public shareholders should be afforded the opportunity to invest in Centerline on terms similar to those offered to Defendant Related Companies (and therefore Defendant Ross and Defendant Blau) and terms which were significantly sweeter than needed to be offered to other parties to obtain the same amount of capital. Therefore, the other Individual Defendants failed to adequately review the Proposed Transaction, question or consider whether better deals could have been obtained from parties unaffiliated with Defendant Ross, or ensure that there were good faith solicitations, discussions or negotiations with independent, disinterested *third* parties about an alternative transaction.

60.    It is of particular importance to note that the Company has not announced or disclosed the formation of a special committee comprised of "independent trustees" to evaluate the Proposed Transactions or any strategic or financial alternatives thereto. All the Individual Defendants, including those conflicted by their relationships and affiliations with Defendant Ross, participated in the review and/or wrongfully approved the Proposed Transaction.

61.    Centerline discloses in its 2007 Proxy that Defendants Ross, Blau, Schnitzer, Cotton and White are "Non-Independent," which is presumably due to

their relationships and connections to Defendant Ross and Defendant Related Companies.

62.    As set forth above, Defendants Ross and Blau are financially interested in the Proposed Transaction due to their control and ownership in Defendant Related Companies and the Related Affiliate. They are therefore unable to legitimately exercise business judgment when considering a demand.

63.    Defendant Schnitzer has earned his livelihood as President of AMAC, and currently serves as Chairman of AMAC, which has done substantial business with Centerline and other entities affiliated with and controlled by Defendant Ross. Therefore, Defendant Schnitzer is unable to legitimately exercise business judgment when considering a demand.

64.    Defendant Cotton profited from Centerline's acquisition of ARCap REIT, Inc. at a time when Defendant Cotton was the CEO of that company and Defendant Ross served as Chairman of Centerline and controlled the largest block of Centerline common shares and therefore he cannot act impartially or independently.

65.    Defendant White was hired by Centerline as a consultant, and thus for a time his income depended (at least in part) on business from Centerline and therefore he cannot act impartially or independently.

66.    Centerline's 2007 Proxy designated Dolan as "Independent," however, Defendant Dolan cannot act impartially or independently due to his position as the Dean of the Stephen M. Ross School of Business at the University of Michigan and as the Stephen M. Ross Professor of Business Administration at the University of Michigan.

67.    During Defendant Dolan's tenure as Dean of the Stephen M. Ross School or Business at the University of Michigan, he secured from Defendant Ross a $100 million gift (and other enormous donations from Defendant Ross). Indeed, the University of Michigan changed its business school's name to the Stephen M. Ross School of Business after receiving this nine-figure donation. Therefore, Defendant Dolan is unable to legitimately exercise business judgment when considering a demand.

68.    The Individual Defendants - all Managing Trustees of the Centerline Board - breached their fiduciary duties and other common law duties by failing to fairly and adequately and in good faith solicit third parties to engage in transactions alternative to the Proposed Transaction, or to negotiate and discuss such alternative transactions with third parties, or ensure that such good faith solicitations, negotiations and discussions took place, or review the Proposed Transaction. The Individual Defendants breached their fiduciary duties by treating Defendants Ross,

Blau and Related Companies differently (better) than Centerline's public shareholders, by failing to consider in good faith whether the same terms offered in the Proposed Transaction should have been offered to all of Centerline's shareholders. The Individual Defendants breached their fiduciary duties by agreeing to the Proposed Transaction without adequate consideration of alternative strategic transaction.

69.    Because the Individual Defendants failed to obtain a control premium for the Centerline stock to be transferred to Defendant Related Companies and the Related Affiliate in the Proposed Transaction.  Centerline has been and continues to suffer harm such as the dilution of Centerline's value.

70.    Consequently, at least six of the eleven Managing Trustees of Centerline's Board of Trustees are unable to validly exercise business judgment in considering a demand. Demand is therefore excused.

## FIRST CAUSE OF ACTION

### Against All Defendants for Breach of Fiduciary Duty

71.    Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

72.    Defendants owed and owe Centerline fiduciary obligations. By reason of their fiduciary relationships, Defendants owed and owe Centerline the highest obligation of good faith, fair dealing, loyalty and due care.

73.    Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

74.    Under the circumstances here, the Individual Defendants were required to solicit alternative transactions to the Proposed Transaction or ensure that such good faith solicitations and related efforts took place, and to consider and fully inform themselves about such alternative transactions to raise capital for the Company. These duties do not permit the Individual Defendants to simply choose a transaction that benefits certain shareholders at the expense of others.

75.    The Individual Defendants failed to fulfill their fiduciary duties by failing to solicit third parties to engage in transactions alternative to the Proposed Transaction, or to ensure that such good faith solicitations and related efforts took place, and by failing to review and consider such alternatives to the Proposed Transaction. They have failed to fully inform themselves about any other possible competing proposals, and have instead never solicited them, or simply rejected them without fully and reasonably considering whether any such alternative

transaction would provide greater value to Centerline rather than just to those affiliated with Defendants Ross, Blau and Defendant Related Companies.

76.     The Individual Defendants then further breached their fiduciary duties by agreeing to the Proposed Transaction with full knowledge that it would result in a transfer of ownership (without payment of a control premium) and voting power to Defendant Related Companies, and thus to Defendants Ross and Blau, while simultaneously diminishing the Company's value by roughly 40 percent.

77.     The Individual Defendants also breached their fiduciary duties by favoring other interests over those of the Centerline shareholders. They agreed to the Proposed Transaction in order to enrich unjustly Defendants Ross and Blau because they were beholden to Defendant Ross and feared losing the benefits they enjoyed and would continue to enjoy from their relationship with Defendants Ross, directly and/or through positions on companies or entities affiliated with Defendant Ross or with institutions (such as the Stephen M. Ross School of Business at the University of Michigan) receiving benefits from Defendants Ross and/or Related or its affiliates.

78.     The Company has been harmed by these breaches of fiduciary duty in that an alternative transaction could have resulted in improved terms to an investment or other infusion of capital for the Company. As a direct and proximate

result of Defendants' failure to perform their fiduciary obligations, Centerline has sustained significant damages. As a result of the misconduct alleged herein, Defendants are liable to the Company.

79.    By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward the Company. The actions of the Defendants could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

80.    By reason of the foregoing, Plaintiffs are entitled to appropriate relief.

## SECOND CAUSE OF ACTION

### Against All Defendants for Usurpation of Corporate Opportunity

81.    Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

82.    As a result of the Proposed Transaction and the other matters referenced herein, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, Defendants have and continue to usurp and waste Centerline's valuable corporate assets.

83.    At the time of the Proposed Transaction, each Defendant stood in a fiduciary relationship with the Company.  As such, each Defendant was prohibited from acquiring or interfering with corporate property.

84.    However, rather than pursuing more appropriate alternatives with disinterested parties, Defendants seized upon an opportunity to use corporate property to line their own pockets via the Proposed Transaction.

85.    Defendants should be ordered to cease proceeding with the Proposed Transaction, and required to disgorge all profits, benefits and other compensation wrongfully obtained by them to date.

## THIRD CAUSE OF ACTION

### Against All Defendants for Unjust Enrichment

86.    Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

87.    By their wrongful acts and omissions, each defendant was unjustly enriched at the expense of and to the detriment of Centerline.  Certain of the executive officers and/or directors named as Defendants herein received millions of dollars in ill-gotten gains at the Company's expense.

88.    Plaintiffs seek restitution from Defendants, and each of them, and seeks an order of this Court enjoining the Proposed Transaction, and disgorgement

all illicitly obtained proceeds and benefits to date, and each of them, from their wrongful conduct, fiduciary breaches and unjust enrichment as provided for by state law.

## FOURTH CAUSE OF ACTION

### Against All Defendants for Gross Mismanagement

89.    Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

90.    Defendants have grossly mismanaged Centerline by consciously or deliberately failing to exercise independent and effective oversight of Coke and its executives, and thus have caused or permitted that gross mismanagement.

91.    By their actions, Defendants breached their duties to oversee, direct and control Centerline in a manner consistent with the legal duties of directors of a publicly held company and under applicable law.

92.    Plaintiff, as a shareholder and representative of the Company, seeks damages and other relief for Centerline.

## FIFTH CAUSE OF ACTION

### Aiding and Abetting Breaches of Fiduciary Duties
### Against Defendant Related Companies

93.    Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

94.    The Individual Defendants owe Plaintiffs the fiduciary duties of care, good faith and unflinching loyalty. As is detailed in the preceding paragraphs, the Individual Defendants have breached their fiduciary duties to the Company. Defendant Related Companies aided and abetted the Individual Defendants' breaches of fiduciary duty. Defendant Related Companies actively and knowingly induced the Individual Defendants to breach their fiduciary duties to Centerline and its shareholders and colluded with the Individual Defendants in their attempts to circumvent the Individual Defendants' fiduciary duties.

95.    Defendant Related Companies colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and was an active and knowing participant in the Individual Defendants' breaches of fiduciary duties owed to Plaintiff.

96.    Defendant Related Companies knowingly participated in the breaches of fiduciary duties by the Individual Defendants for the purpose of advancing its own interests. Defendant Related Companies will obtain both direct and indirect

benefits from colluding in or aiding and abetting the Individual Defendants' breaches. Defendant Related Companies will benefit, *inter alia,* from the acquisition by Defendant Related Companies of the Company's newly-issued preferred stock at a discount to what should be paid for a controlling block of stock.

97.    The Company has been harmed by Defendant Related Companies aiding and abetting the Individual Defendants' breaches of fiduciary duty in that in that an alternative transaction could have resulted in improved terms to an investment or other infusion of capital for the Company.  By reason of the foregoing, the Company is entitled to appropriate equitable relief. It has no adequate remedy at law.

WHEREFORE, Plaintiffs demand the following relief in their favor and against Defendants as follows:

A.    Authorizing the maintenance of this action as a derivative action, with Plaintiffs as derivative plaintiffs;

B.    Declaring that Defendants have breached their fiduciary and other duties to the Company;

C.    Preliminarily and permanently enjoining Centerline and any of the Individual Defendants and any and all other employees, agents, or representatives of the Company and persons acting in concert with any one or more of any of the

foregoing, and Defendant Related Companies or any of its affiliates (including Related General II), during the pendency of this action, from taking any action to consummate the Proposed Transaction;

D.    Awarding the Company compensatory damages, together with prejudgment and post-judgment interest, or, in the alternative, rescission or a rescission measure of damages;

E.    Finding Defendant Related Companies liable for aiding and abetting the breaches of fiduciary duty by the Individual Defendants;

F.    Awarding costs and disbursements of this action, including Plaintiffs' attorneys', accountants', and experts' fees; and

G.    Granting such other and further relief as to the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

DATED: February 22, 2008                 SHALOV STONE BONNER & ROCCO LLP


By: _Ralph M Stone_____
        Ralph M. Stone
            (rstone@lawssb.com)
        Thomas G. Ciarlone
            (tciarlone@lawssb.com)
        485 Seventh Avenue, Suite 1000
        New York, New York  10018
        Tel.  212.239.4340
        Fax   212.239.4310

        -and-

        Corey Holzer
            (cholzer@holzerlaw.com)
        Michael I. Fistel, Jr.
            (mfistel@holzerlaw.com)
        Marshall P. Dees
            (mdees@holzerlaw.com)
        HOLZER HOLZER & FISTEL, LLC
        1117 Perimeter Center West
        Suite E-107
        Atlanta, Georgia  30338
        Tel  770.392.0090
        Fax  770.392.0029

        *Attorneys for Plaintiffs*

VERIFICATION

State of Ohio                          :
                                       :
Hamilton County                        :

I, Louis Kanter, depose and verify as follows:

I am plaintiff in the within derivative action on behalf of the nominal defendant Centerline Holding Company ("Centerline"). I am currently a shareholder of Centerline and was a shareholder at all times relevant hereto. The action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. I have reviewed the allegations made the Verified Shareholder Derivative Complaint ("Complaint"), and as to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and believe them to be true. Having received and reviewed a copy of this Verified Shareholder Derivative Complaint, and having reviewed it with my counsel, I hereby authorize its filing.

Sign under the penalty of perjury this 19th day of February, 2008.


_____
Louis Kanter

VERIFICATION

State of _TEXAS_                    :
                                   :
_CAMRON_ County                    :

    I, _JAMIE L. STARK_ depose and verify as follows:

    I am plaintiff in the within derivative action on behalf of the nominal defendant Centerline Holding Company ("Centerline"). I am currently a shareholder of Centerline and was a shareholder at all times relevant hereto. The action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. I have reviewed the allegations made the Verified Shareholder Derivative Complaint ("Complaint"), and as to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and believe them to be true. Having received and reviewed a copy of this Verified Shareholder Derivative Complaint, and having reviewed it with my counsel, I hereby authorize its filing.

    Sign under the penalty of perjury this 20th day of February, 2008.

_Jamie L. Stark_